COASTWISE LUMBER & SUPPLY CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 20, 1919.)

No. 237.

CRIMINAL LAW ⬦1023(3)—APPEAL—"INTERLOCUTORY ORDER."

An order of a District Court denying the petition of defendants in a criminal case for return of books and documents seized as having been used in commission of a felony, under search warrants issued pursuant to Act June 15, 1917, tit. 11, § 2 (Comp. St. 1918, § 10496¼b), and held as evidence, whatever the proceeding may be entitled, is an interlocutory order in the criminal case, and under Judicial Code, § 128 (Comp. St. § 1120), is not reviewable by the Circuit Court of Appeals.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interlocutory Order.]

Manton, Circuit Judge, dissenting.

Appeal from and in Error to the District Court of the United States for the Eastern District of New York.

Criminal prosecution by the United States against the Coastwise Lumber & Supply Company. In the matter of the books and papers of the Coastwise Lumber & Supply Company. From an order deny-

ing its petition for return of such books and papers, the company appeals and brings error. Dismissed without prejudice.

John J. Curtin, of New York City, for appellant.

James D. Bell, U. S. Atty., of Brooklyn, N. Y.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. The Coastwise Company, out of abundant caution, has taken both an appeal and a writ of error in this case. The proper remedy is the writ of error, and we shall take no further notice of the appeal.

The subject of review is an order of the United States District Court for the Eastern District of New York dated February 17, 1919, denying the petition of the Coastwise Company dated January 11 for a return of its books, papers, and memoranda impounded by an ex parte order of the District Court dated November 25, 1918, so that they might be used by the government in the trial of indictments pending against the Coastwise Company and 15 individual defendants.

November 7, 1918, the individual defendants were arrested; the indictments against all the defendants were found November 22, and the books, papers, etc., were originally seized under search warrants issued by United States commissioners under the act of June 15, 1917, c. 30, 40 Stat. 217, as being property used as means for committing a felony, viz. a conspiracy to defraud the United States in violation of section 37 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1906 [Comp. St. § 10201]). One warrant was issued in the Eastern district of New York November 15, 1918, one in the Southern district November 16, and one in the district of New Jersey on the same date.

November 22, 26, and 27 the Coastwise Company demanded hearings before the respective commissioners under sections 15 and 16 of title 11 of the act of June 15, 1917 (Comp. St. 1918, §§ 10496¼o, 10496¼p); but the commissioners in the Eastern and Southern districts of New York refused to proceed further because of the impounding order, and, though the commissioner in the district of New Jersey vacated the search warrant issued by him, the United States marshal of that district had already handed over to the United States attorney for the Eastern district of New York the books and papers seized under it.

The government at the outset makes the objection that the order is interlocutory, and therefore not appealable, because our appellate jurisdiction is restricted to final decisions of the District Courts, with exceptions not material here. Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1133 [Comp. St. § 1120]), § 128.

It seems to us quite manifest that the search warrants were issued in the criminal action. They describe the property authorized to be seized as being used to commit a felony, viz. a conspiracy to defraud the United States in violation of section 37 of the Penal Code. The individual defendants had been already arrested on this charge, and all the defendants were under indictment before the Coastwise Company made its demand for a hearing before the United States

commissioners under sections 15 and 16 of title 11 of the act of June 15, 1917, and of course before this petition was filed in the District Court.

It may be suggested that the petition was an independent proceeding because the notice of motion and the affidavit in support of it were entitled "In re Books and Papers of the Coastwise Lumber & Supply Company, a Corporation," and the subsequent proceedings were entitled in a similar way. We regard the form of title used as of little importance. The material consideration is whether the demand was made in the criminal action or as an independent special proceeding. A defendant cannot make an interlocutory order final by the choice of any particular form of title. All the earlier proceedings were entitled in the criminal action "United States of America against Coastwise Lumber & Supply Company, Inc.," and the other defendants. The particular order sought to be reviewed describes the books and papers as impounded "to aid the government in the prosecution of indictments against the said corporation and other defendants mentioned in said indictments," and in his opinion the District Judge describes the Coastwise Company, the petitioner, as the defendant, saying: " * * *. Inasmuch as it appears that all of the papers are absolutely necessary to the government's case against the defendant, I am not disposed to interfere with the impounding order."

In the case of Wise v. Mills, 220 U. S. 549, 31 Sup. Ct. 597, 55 L. Ed. 579, the District Court entered an order committing the United States attorney for contempt, because of his refusal to obey its order to return books and papers of the defendant in a criminal action seized without a warrant. Upon his writ of error the Supreme Court held that the order committing for contempt was final as to the United States attorney because, he not being a party to the criminal action, nothing more remained to be done as far as he was concerned, while it held the order to return the defendant's books and papers was interlocutory.

When one not a party to the action has been committed for contempt, the order is final and appealable as to him (Nelson v. United States, 201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673; Alexander v. United States, 201 U. S. 117, 26 Sup. Ct. 356, 50 L. Ed. 686); and when there is no action pending a demand for a return of books and papers seized is of course an independent special proceeding (Perlman v. United States, 247 U. S. 12, 38 Sup. Ct. 417, 62 L. Ed. 950; Veeder v. United States, 252 Fed. 414, 164 C. C. A. 338).

Because it is not before us, we express no opinion upon the question whether this wholesale seizure of the Coastwise Company's books and papers was an infringement of its rights under the Fourth and Fifth Amendments of the Constitution of the United States, but, because the order before us is interlocutory, the writ of error is dismissed without prejudice.

MANTON, Circuit Judge (dissenting). I regret that I cannot concur in the prevailing opinion. The majority of the court do not express their opinion as to this seizure, but the seizure of the books and papers

in this record is illegal, and therefore the constitutional rights of the petitioner were violated. Then, if the seized books and papers be used upon the trial or be received in evidence at the trial of the indictment and a verdict of guilty be rendered, the conviction must be reversed. But the majority of the court hold that the refusal of the district judge to order their immediate return is not a final order, and therefore is not subject to review by this court.

The order appealed from was entered on the 17th of February, 1919, and denied the application of the petitioner, the Coastwise Lumber & Supply Company, a corporation, for the return of its books and papers which were impounded with the court by its order. It recites:

"It is ordered that the motion for an order directing the return of said papers be, and the same hereby is, denied, upon the ground that said papers have been duly impounded by this court."

The books and papers in question were taken under writs of seizure and alleged search warrants issued against the petitioner by the United States commissioners in the Eastern and Southern districts of New York and the district of New Jersey. The warrant for the seizure of the books and papers was executed about the 16th of November, 1918. This warrant was entitled "United States v. Coastwise Company et al." On November 22, 1918, the defendants were indicted, and on the 26th of November, 1918, an affidavit was filed with the commissioner denying the charges and demanding a hearing that the warrant be vacated; this pursuant to a provision of the Espionage Act (see sections 1 and 2, tit. 11, chap. 30, enacted by Congress June 15, 1917 [Comp. St. 1918, §§ 10496¼a, 10496¼b]). After the books and papers were obtained pursuant to the executed warrant, an impounding order was granted upon application of the assistant United States attorney, and this gave possession and control of the books and papers to the court. This proceeding was entitled as a special proceeding "In the Matter of the Application in re Books and Papers of the Coastwise Lumber & Supply Company, a corporation." An application was made before the commissioner for the Eastern district of New York for a hearing as to the return of the books and papers, which was denied.

It appears many of these books and papers were seized in the Southern district of New York, and on November 19th delivered to the assistant United States attorney, who brought them to the Eastern district, where they were impounded pursuant to the order therefor on November 25th. The commissioner for the district of New Jersey on December 9, 1918, vacated the warrant of search and seizure.

After all these proceedings, on January 10, 1919, this petitioner made a demand, in the Eastern district of New York, for the return of the books and papers. This was refused. As was its right, the petitioner then filed its petition in the District Court for an order "requiring the return of certain books and papers which were heretofore taken by virtue of certain alleged warrants of search and seizure issued against the petitioner by the commissioner for the Eastern district of New York, the commissioner for the Southern district of New York, and the commissioner of New Jersey, and for such other

and further relief as justice requires." This proceeding is entitled "In re Books and Papers of the Coastwise Lumber & Supply Company, a Corporation."

In support of this application there were presented affidavits of the president of the corporation, its attorney, and an office employé who had charge of its books. These affidavits were similarly entitled. The District Judge, in an opinion filed with the same title, denied the application, and an order was entered thereon entitled "In re Books and Papers of the Coastwise Lumber & Supply Company, a Corporation." The District Judge said:

"Were it not for the existence of the impounding order, I should have no hesitation in directing the testimony to be taken so that such books and papers as might be found to have been improperly taken or held could be restored without delay to persons from which they were taken, as provided in section 16 of [title 11 of] the Espionage Act."

But, further, he concluded that, inasmuch as the court had power to impound the papers pursuant to such an order made, he refused to direct the return of the papers.

The petitioner had five places of business, and the seizure was made in its offices, and also in the law offices of its attorneys. Their offices are not in any way connected or even in the same building with the petitioner. The warrant was issued upon an affidavit which recited that "certain papers were used as a means for committing a felony, to wit, a conspiracy to defraud the United States in violation of section 37 of the Penal Code, said property being that described as follows: Books, ledgers, invoices, delivery tickets, writings, papers, correspondence, checks, check stubs, bills, way bills, bills of lading, receipts, and journals, the same being described in affidavits of Mitchell Dawson and the supporting affidavits of William A. Weed and Valentine W. Corell."

Dawson swore that he "had been informed by various persons in his official capacity as sergeant, military intelligence corps, United States army, learned and found facts which caused him to believe that the commission of said felony, to wit, conspiracy to defraud the United States government, has taken place."

Weed's corroborating affidavit stated that he "has probable cause to believe that a felony has been committed," but he does not specify information which gives him this probable cause to believe, nor does he state that he believes the statements which were made to him.

The concealment of the papers is alleged to be in the offices and yards of the corporation. It is difficult to conceive of the concealment of papers which are in the regular place of business of a corporation or even at the office of its attorney. The corroborating affidavit of Corell states, and without furnishing further information as to what he has heard, that because of certain conversations with certain persons he has probable cause to believe that the other defendants were coconspirators with the petitioner in defrauding the United States government.

To obtain a warrant under this provision of the Espionage Act, under which this proceeding was instituted, there must be some satis-

factory legal proof; that there is probable cause to believe that a crime has been committed; that the books and papers to be taken were means or instruments through which the crime was committed; and that the books and papers were concealed.

Section 3 of title 11 of the act (Comp. St. 1918, § 10496¼c) provides that a search warrant cannot be issued but upon probable cause, supported by an affidavit naming or describing the persons, and particularly describing the property and the place to be searched. Section 5 (section 10496¼e) provides that the affidavits or depositions must set forth the facts tending to establish the grounds of the application; of probable cause for believing that they exist.

In this application for the return of its books and papers, the petitioner relied upon the Fourth Amendment to the Constitution, which provided the limit beyond which Congress may not go in authorizing search warrants. It provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

It was the intention of Congress in the passage of the Espionage Act to observe the limitations of this constitutional provision. Section 2 of title 11 of the Espionage Act provides that property and papers may be seized if stolen or embezzled in violation of the laws of the United States, or if the property is used as a means for committing a felony; and then it may be taken on a warrant from any house or other place in which it may be concealed, or from the possession of the person by whom it was used in the commission of an offense, or any other person in whose possession it may be. The Circuit Court of Appeals for the Seventh Circuit, in Veeder v. United States, 252 Fed. 414, 418, 164 C. C. A. 338, 342, said:

"One's person and property must be entitled, in an orderly democracy, to protection against both mob hysteria and the oppression of agents whom the people have chosen to represent them in the administration of laws which are required by the Constitution to operate upon all persons alike.

"One's home and place of business are not to be invaded forcibly and searched by the curious and suspicious; not even by a disinterested officer of the law, unless he is armed with a search warrant."

Under the provision of the Espionage Act, and under the settled rules of law as laid down by the Supreme Court (Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177), search warrants can only be issued where the facts are set forth under oath, and not upon suspicions, surmises, or innuendoes. The facts must be stated which, when the law is properly applied to them, at least tend to establish the necessary legal conclusion that there is probable cause for believng that the crime has been committed. Whether entry shall be made into the home of the accused or the business place of the corporation must be determined by the facts set forth in the affidavit, and not by mere rumor or hearsay or suspicion. Indeed, the legal conclusion of probable cause is

not for the affiant, but is a duty delegated to the judge who issues the warrant; and he can only draw such a conclusion upon sworn statements of fact. The Constitution does not protect petitioner's property that has been used in the commission of a felony, and it does not permit the seizure of its books and papers which were not used as a means of committing a felony. The latter class of papers are immune from seizure; therefore the necessity of a proper description of the papers, and a plain statement of fact that the papers seized were used in the commission of a felony. Therefore the necessity of reliable statements of fact to aid the judicial officer in reaching the legal conclusion as to probable cause. There must be some positive statement which subjects the affiant to the charge of perjury if he falsely swears in his affidavit. Veeder v. United States, supra. An application of these rules of law to the affidavits upon which this search warrant was issued, demonstrates its invalidity, and that it was improperly issued and should have been vacated by the District Judge.

If the seizure was illegal, and therefore the constitutional rights of the appellant violated, upon what authority of law can the impounding order be sustained? This proceeding resulted in a compulsory turning over of the books and papers to the court. It was not a voluntary surrender of the property or its possession, and the District Judge could not strengthen or rectify the unlawful seizure by granting an impounding order.

Justice McKenna said in Perlman v. United States, 247 U. S. 13, 38 Sup. Ct. 417, 62 L. Ed. 950, speaking of the protection of the Fourth and Fifth Amendments of the Constitution and the right of seizure:

"They preclude, of course, compulsion, either upon the individual, or, under some circumstances, his property; nor is it a condition or part of compulsion that there be an actual entry upon the premises, an actual search and seizure. The principles preclude as well the extortion of testimony or detrimental inferences from silence or refusals to testify." °

Perlman, in the case cited, was refused his exhibits because he delivered them for use upon the trial and even though he owned the exhibits. It was said that "the criterion of immunity, not the ownership of property, but the physical or moral compulsion" exerted, is the test. If the initial taking was a trespass against property and an invasion of the constitutional protection, it is tantamount to governmental extortion, and the court could not lawfully continue the seizure by issuing an impounding order. Perlman v. United States, supra. The test is the manner in which the property was obtained, and not the mere fact that the accused has a title to the property in question. In my opinion, the District Judge was not precluded from returning these books and papers which were illegally seized because there was in force and effect an impounding order.

This court has power to review a final order. Interlocutory in law means not that which decides the cause, but that which only settles some intervening matter relating to the cause. Moza v. Ins. Co., 22 How. Prac. (N. Y.) 62. An interlocutory order is one which is made pending the cause and before a final hearing on the merits. Interlocu-

tory means intervening, happening, accruing, or imposed between the commencement and determination of proceedings.

The test of whether an order is interlocutory is dependent upon the question of whether the party instituting the proceeding or suit in which the order is made began an independent proceeding, rather than move in the pending criminal prosecution, and did it seek a right independent of the criminal prosecution? As stated when this appellant proceeded to obtain the return of its books and papers, it based its application upon the right of protection of the Fourth Amendment of the Constitution, which right was violated by the officers in the seizure. It did not move in the action. All the proceedings are entitled as in an independent proceeding. The impounding order itself was so entitled as a special proceeding. The test is, what determined the character of the proceeding instituted for the return of the books upon which the order of denial was entered? The nature of any order, as a decree or final order, or as not final, depends entirely upon the effect produced by adjudication upon the rights and interests of parties. The usual distinction between interlocutory and other orders, depending on the stage of the cause on which they are made, is not the test for appellate purposes. The present appellant is the only one of the defendants named in the indictment who applied for the return of the books.

In Perlman v. United States, supra, in dealing with the appealability of the order there in question, the court said:

"The second contention of the government is somewhat strange; that is, that the order granted upon its solicitation was not final as to Perlman, but interlocutory in a proceeding not yet brought, and depending upon it to be brought. In other words, that Perlman was powerless to avert the mischief of the order, but must accept its incidence, and seek a remedy at some other time and in some other way. We are unable to concur."

Assuming, in the present case, that at some time the indictment as to the petitioner was dismissed, and the prosecution continued as against the other defendants, the present order, which is held not to be appealable, would be res adjudicata as to any further effort made by this petitioner for the return of its books. Nor is it an answer to say that the illegal seizure of the books and property can be taken advantage of upon the trial by objecting and successfully excluding them from evidence. The petitioner always has this protection, irrespective of its success or nonsuccess by this appeal, under the fifth amendment of the Constitution, which would forbid the use of books and property obtained by unlawful seizure being used against it upon the trial. It is not the rights of the petitioner alone that must be protected, but the interests of the government are equally as important to protect under this amendment. It may well be that the prosecution, entirely independent of these books, could secure a conviction under the indictment, and, if the book and papers were admitted, the admission of them in evidence must result in a reversal of the conviction. The result would be that on the trial of the indictment only one of the parties could be successful. The defendants there, even with this evidence admitted, still have a chance of acquittal, and, if found guilty,

the conviction must be reversed, for the government could not sustain a conviction based on this evidence. Nor are the authorities relied upon by the government in conflict with this view.

In Alexander v. United States, 201 U. S. 117, 26 Sup. Ct. 356, 50 L. Ed. 686, an order was entered upon a proceeding in contempt and it was held to be interlocutory. There a witness refused to answer questions or produce books for the examiner on the ground of immateriality. In pleading this privilege under the Fifth Amendment, the court held that while such an order made left the witness no alternative except to obey or be punished for contempt, it was interlocutory in the principal suit, and not a final order, for it did not constitute an independent proceeding amounting to a final judgment, and consequently held that an appeal did not lie therefrom to the Supreme Court. But the court said that if the witness refused to obey, and the District Court went further and punished for contempt, there would then be a right of review, as this would be a final order, saying:

"I have no doubt that a judgment adverse to the witnesses in that proceeding or case will be a final decision, and will be subject to review by a writ of error, but not by appeal."

In Wise v. Mills, 220 U. S. 549, 31 Sup. Ct. 597, 55 L. Ed. 579, the court held that the fact that a question under the Constitution is involved, and an order requiring the production of books and papers does not establish that a constitutional question is involved in the order committing for contempt for refusing to comply with the order to produce, and held that the Supreme Court had not jurisdiction to review a judgment committing for contempt for failure to produce simply because the interlocutory order which the appellant refused to obey involved a constitutional question, and where it does not appear that the order disobeyed was so far de hors the authority of the court as to be avoided.

That proceeding was instituted in an action to punish the United States attorney for failure to turn over the books which were ordered returned after an improper seizure. What the court decided in that case seems to be embraced in the following quotation from the opinion:

"That is to say, we are of opinion that the contention upon which the asserted right to prosecute the error directly to this court was based is so devoid of all foundation as to render it necessary to decline to assume a jurisdiction which we have not, and therefore the writ of error is dismissed."

The previous proceeding for the return of the books which the United States attorney refused to obey was made upon a petition in the criminal prosecution, and was not an independent proceeding as here. The case of Penn. R. Co. v. International Coal Mining Co., 156 Fed. 765, 84 C. C. A. 421, and Crooker v. Knudsen, 232 Fed. 857, 147 C. C. A. 51, were both proceedings in the action, and were held to be interlocutory and not final. With this situation, the books which have been unlawfully seized are now in the possession of the government officers, with no way for their return except possibly, upon a new application, the District Judge may grant the relief which this court denies to the appellant, because the order is not appealable. Therefore books in the possession of the government attorney, which he cannot use upon the trial, and which he cannot or should not use in adducing

evidence against the defendants, for under the law the petitioner is entitled to their return, and this includes all the privacy that ownership of such property carries with it.

For these reasons the order appealed from should be reversed.