## WEST KNOXVILLE AMERICAN LEGION POST 223, Appellee,

v.

## Joe JENKINS, Sheriff of Knox County, Tennessee, Appellant.

Court of Criminal Appeals, at Knoxville.

May 14, 1982.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, James R. Dedrick, Asst. Dist. Atty., Knoxville, for appellant.

Norman L. Griffin, Knoxville, for appellee.

## OPINION

TATUM, Judge.

This is an appeal by the Sheriff of Knox County from a judgment of the Criminal Court of Knox County ordering alleged gambling equipment to be returned to West Knoxville American Legion Post 223. By means of a search warrant, the appellant sheriff seized on the premises of the appellee American Legion Post a one-half oval table with green felt top, one Winter Book racing game, three slot machine outer case empty shells, and an assortment of slot machine parts.

The appellee filed a petition for return of the property seized pursuant to Rule 41(f) of the Tennessee Rules of Criminal Procedure. The trial judge found that the green felt top table had been built shortly before it was seized. Though it had not been used when seized, it was built and kept for use as a blackjack table and for bingo and raffle activities. The trial judge further found that the three slot machine outer case empty shells and assortment of slot machine parts were stored in the American Legion building and were not in usable condition when seized. The court also found that revenues from gambling activities of the American Legion Post were placed in a special account from which rents, utilities and various other costs of maintaining the post headquarters were paid. Monies from this account were also contributed to other charitable organizations and no salaries were paid from this account.

The court also found that West Knoxville American Legion Post 223 is a charitable organization exempt from taxation pursuant to Paragraph 19, Subsection C, Section 501 of the Internal Revenue Code of 1954. The court held that pursuant to T.C.A. § 39–2039, the American Legion Post "fully meets the exemptions to the chapter covering gambling statutes and is therefore exempt from the provisions therein." On this basis, he ordered the slot machines and parts and the felt covered table returned to the appellee.

■ The trial judge erroneously construed T.C.A. § 39–2039(a)(1), (2). This section provides in pertinent part:

"39–2039. Exceptions. (Repealed effective July 1, 1983.)—(a)(1) This chapter shall not apply to any bingo game, raffle or similar game of chance conducted by a religious or charitable organization exempt from taxation pursuant to paragraph (3) of subsection (c) of § 501 of the Internal Revenue Code of 1954, as amended; ... or any organization of war veterans, or post or organization of war

veterans exempt from taxation pursuant to paragraph (19) of subsection (c) of § 501 of the Internal Revenue Code of 1954, as amended; . . . Provided further, this exemption applies only if no part of the receipts from such activity enures to the benefit of any private shareholder, member, or employee of such organization; and only if all proceeds, after necessary and reasonable costs, be used for charitable or religious purposes, including educational and youth programs and constructing or maintaining a building to be occupied by the exempt organization. Provided further, the total of such necessary and reasonable cost, including constructing or maintaining a building to be used by the organization, salaries, and other expenses of conducting the activities permitted pursuant to the exemption provided in this subsection, shall not exceed twenty-five percent (25%) of the gross receipts derived from such activities.

(2) 'Similar game of chance' shall not include any game or device specified in the definition of 'professional gambling' in § 39–2033.”

Specified in the definition of "professional gambling" in T.C.A. § 39–2033(3) is "maintaining slot machines" and "conducting any banking or percentage game played with cards." Thus, when § 39–2039(a)(2) is construed *in pari materia* with § 39–2033(3), we conclude that slot machines and blackjack are not "similar" games to bingo and raffle. We are also persuaded by reason that slot machines and blackjack are dissimilar to bingo and raffle games. Bingo is a game in which players place markers on a pattern of numbered squares, according to numbers drawn and announced by a caller. See T.C.A. § 39–2033(9). Raffle is a form of lottery in which a number of persons buy one or more chances to win a prize. *The Random House College Dictionary,* Revised Edition, 1975. The phrase "similar game of chance" as contained in § 39–2039(a)(1) embraces only games involving the same principles and substantially the same method of play as bingo and raffle. The card game of blackjack (or 21)

and the "one-armed bandit" type slot machines are wholly dissimilar to bingo and raffle in principles and methods of play.

Charitable and veterans organizations exempt from taxation pursuant to the Internal Revenue Code are not exempt from the general provisions of the gambling statutes. These organizations are only exempt with respect to bingo, raffle, and similar games. T.C.A. § 39–2039(a)(1). The trial judge erred in ordering the oval (blackjack) table with green felt top and the "slot machine outer case empty shells" and assortment of slot machine parts to be returned to West Knoxville American Legion Post 223. This property is subject to confiscation and forfeiture pursuant to T.C.A. § 39–2034(a), (2), (3).

■ The trial judge also ordered the Winter Book racing game returned to the American Legion Post. The court found that the "Winter Book racing machine has been found on four different occasions by the courts of Knox County to be lawful." The trial judge stated that he had previously found this game to be in the category of pinball machines and this court affirmed his judgment in *State of Tennessee v. Deane Hill Country Club, Inc., et al,* C.C.A., Knoxville, opinion filed August 20, 1980. The Assistant Attorney General, representing the sheriff, offered to prove that the Winter Book machine was being used at the time of seizure as gambling equipment in violation of T.C.A. § 39–2034(3). The trial judge refused to permit any evidence on this issue offered by the appellant and would not permit the appellant to place the evidence in the record for our benefit on appeal. The court would not permit appellant's counsel to make a statement or argument on this issue.

In the unreported opinion of this court in the *Deane Hill Country Club* case, referred to by the trial judge, there was no allegation concerning the use of the Winter Book racing machine. The *Deane Hill* panel decided the case on principles of *res judicata.* There had been a previous adjudication that the machine was not a gambling device *per*

se and there was no appeal from the previous judgment. The panel did not reach the question of whether the machine was a "gambling device" as defined in T.C.A. § 39–2033(4). Under this section and § 39–2034(1), (2), and (3), many innocent articles may be used in such manner as to make them subject to confiscation. See *McClary v. State,* 211 Tenn. 63, 362 S.W.2d 457 (1962).

Regardless of the previous use of the Winter Book racing machine by others, it was critical to determine the nature of the device and whether appellee possessed or used it for the purpose of gambling. A device adaptable to non-gambling uses may be used in such manner as to subject it to confiscation under T.C.A. §§ 39–2033 and 39–2034. *Harris v. State,* 207 Tenn. 538, 341 S.W.2d 576 (1960). The trial judge erred in refusing to hear the evidence offered by the appellant with regard to the Winter Book racing game.

The judgment of the trial court is reversed with respect to his judgment ordering the property returned to the appellee. The one-half oval table with green felt top, three slot machine outer case empty shells, an assortment of slot machine parts are ordered destroyed in conformance with T.C.A. § 39–2034(1). The case is remanded to the trial court for a new trial to determine the disposition to be made of the Winter Book racing game.

BYERS and CORNELIUS, JJ., concur.